**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1652-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL N. TEDESCO,
a/k/a MICHAEL TEDESCO,

     Defendant-Appellant.

_____

> Argued May 1, 2024 – Decided September 27, 2024
>
> Before Judges Vernoia, Gummer, and Walcott-Henderson.
>
> On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 19-08-0734.
>
> Stephen W. Kirsch, Designated Counsel, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Stephen W. Kirsch, on the brief).
>
> Boris Moczula, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Boris Moczula, of counsel and on the brief).

The opinion of the court was delivered by

VERNOIA, P.J.A.D.

Defendant Michael N. Tedesco appeals from his conviction for passion-provocation manslaughter of his father, Gary Tedesco (Gary), and related theft and weapons offenses.[1] Defendant argues on appeal he was denied a fair trial because the court's jury instructions did not adequately explain that the justification of self-defense applied to the passion-provocation-manslaughter charge for which he was convicted, the court erred by failing to provide a "course of abuse" charge, and the court failed to question a juror about a note the juror had sent to the court during jury deliberations. Defendant also argues the court erred by departing from established sentencing principles and imposing excessive sentences on his convictions for the manslaughter, theft, and weapons offenses arising from the incident that resulted in his father's death as well as sentences imposed for his convictions for violating probation to which he had separately pleaded guilty. Based on our review of the record, the parties' arguments, and applicable legal principles, we affirm in part, vacate in part, reverse in part, and remand for further proceedings consistent with this opinion.

---

[1] For clarity and to avoid confusion, we refer to Gary Tedesco and Stella Tedesco—Gary's mother and defendant's grandmother—by their first names because they share the same surname. We intend no disrespect in doing so.

2

I.

On April 19, 2019, Millville police responded to a call regarding an incident at the Millville residence where Gary and Stella Tedesco lived. When police arrived, they discovered Gary's bloodied and lifeless body on the kitchen floor. It was later determined his death had been caused by multiple sharp-force injuries to his chest and abdomen. At the scene, police also found three knives, one of which was broken such that the blade had separated from the handle.

Police arrested defendant later that same evening. After administering Miranda[2] warnings and advising defendant he was to be charged with burglary, robbery, theft, and Gary's murder, the police conducted a recorded interview with defendant. The recording was later introduced in evidence during defendant's trial.

During the police interrogation, defendant explained that he and Gary had "got[ten] into it" that morning. Defendant reported he had gone to Gary's and Stella's residence to "get something to eat and take a shower, [and] possibly use the phone" to call a "detox rehab" he planned to enter.[3] Without his own home

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

[3] Defendant later explained that he had a heroin dependency that resulted from a car accident. Defendant stated he had the phone number of a rehabilitation facility written on a paper in his wallet.

A-1652-21

at that time, defendant regularly visited Gary's and Stella's residence, but they did not always let him inside. Defendant explained that on the morning of the incident, Gary let him in the house.

According to defendant, after Gary had let him enter the home, Gary gave plaintiff his cell phone and then "started running at the mouth" and "threatened" defendant. Defendant explained Gary started "putting [him] down," doing "what he always does," calling defendant a "fucking loser," a "piece of shit," a "drug addict," and a person who is "never going to have a life" and "can't ever get it right." Defendant explained that Gary had similarly insulted him for years. Defendant reported that he began "running [his] mouth" at Gary, they "got into a shoving match" in the kitchen, and Gary said he "would kill" defendant.

Defendant further explained that he pushed Gary and Gary grabbed a knife out of a drawer. Defendant pushed Gary down and then grabbed a knife. Defendant stated, "[Gary] came at me, I came back at him. He grabbed a knife. I grabbed a knife." He recalled that Gary was "on his knees" in the kitchen holding a knife in his right hand. Defendant reported that he "blacked out" at that moment and did not recall what happened next. Defendant did not recall stabbing Gary, and explained that after he left the home, his arm was bleeding from a "scrape." Defendant further stated that he had done "something bad" but

4

that he had "been putting up with this all [his] life" and that he would have "walked away" if Gary had not "put his hands on" him. He also told the police that during the incident, "we got into it, I defended myself like . . . and he's dead."

Defendant told police that the next thing he remembered after "black[ing] out" was that it was "just getting dark out" and he was "in the woods," "in the park." Defendant did, however, recall taking Gary's phone during the incident and then afterwards, driving to another residence in Gary's vehicle. Defendant "guess[ed]" that during the incident he had taken the keys to Gary's car. Although he could not remember many of the details of the altercation with Gary, he recalled that Gary "still had a knife . . . I do remember he still had a knife in his hand" during the incident.

Defendant also explained the tumultuous history between himself and Gary. Defendant claimed Gary was an "alcoholic" who "beat on" defendant's mother when defendant was a child and had beaten defendant as well. Defendant explained that Gary: "never really had a relationship" with him; had "never been a father" to him; had inflicted both "physical [and] mental" harm on him; and would "cuss[] [him] out" and "put[] his hands on" him. According to defendant, a week prior to the incident, Gary had "threatened to kick [his] face in."

5

Defendant denied being a "violent person" and explained he had never reciprocated Gary's aggression or "put [his] hands on [Gary] before." Defendant explained he had "always walked away or just taken it" even going so far as moving out of the house, believing that "[s]omething was going to happen" if he remained. Defendant advised that, as a result, he found himself without a home and sleeping in the woods. Defendant further explained that sometimes he "[did] things without thinking" and "without remembering," which he attributed to "a lot of different mental things," including attention-deficit/hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), and "panic attacks." He told police he was "supposed to be on medication" but was not.

A Cumberland County grand jury returned an indictment charging defendant with: first-degree murder, N.J.S.A. 2C:11-3(a)(1) to (2); third-degree possession of a weapon (a knife) for an unlawful purpose, N.J.S.A. 2C:39-4(d); fourth-degree unlawful possession of a weapon (a knife), N.J.S.A. 2C:39-5(d); second-degree burglary, N.J.S.A. 2C:18-2(a)(1); first-degree robbery, N.J.S.A. 2C:15-1(a)(1); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); fourth-degree theft of unspecified movable property, N.J.S.A. 2C:20-3(a); third-degree theft of Gary's vehicle, N.J.S.A. 2C:20-3(a); and fourth-degree tampering with or fabricating physical evidence, N.J.S.A. 2C:28-6(1).

6

Following a series of pre-trial hearings, defendant was tried before a jury. The evidence established Gary had suffered twelve injuries to his chest and abdomen that were caused by a knife, four of which were capable of having caused his death.

During the court's instructions to the jury following the presentation of the evidence and the parties' closing arguments, the court in part charged the jury on the justification of self-defense. The court introduced its instruction on self-defense, noting that before it addressed the "specific sections of the [Criminal] Code regarding the indictment," it would first provide the "law on justification" and self-defense.

The court then informed the jury that "[t]he indictment charges that the defendant has committed the crime of homicide." The court stated that "[t]he defendant contends that if the State proves he used or threatened the use of force upon another person, that such force was justifiably used for his self-protection." The court did not, however, define the term "homicide" for the jury. The court instructed the jury on the justification of self-defense in accordance with the model jury instruction, see Model Jury Charges (Criminal), "Justification - Self

Defense in Self Protection (N.J.S.A. 2C:3-4)" (rev. June 13, 2011),[4] and immediately followed that instruction with the model jury charge on murder, passion-provocation manslaughter, aggravated manslaughter, and reckless manslaughter, see Model Jury Charges (Criminal), "Murder, Passion/Provocation and Aggravated/Reckless Manslaughter (N.J.S.A. 2C:11-3(a)(1) and (2); 2C:11-4(a), (b)(1) and (b)(2))" (rev. June 8, 2015).

The court further instructed the jury concerning its completion of the verdict sheet, explaining that if the jury found "defendant not guilty of murder because he was justified in the use of deadly force in his own self-defense, then you go to Question [Four,]" which concerned the burglary charge. The court did not advise the jury that the justification of self-defense applied and had to be considered in its determination of defendant's guilt on the passion-provocation-manslaughter offense.

In its instructions to the jury, the court also explained how the jury should communicate with the court during its deliberations. The court instructed that questions from the jury should be generally communicated by the jury

---

[4] Although the model jury instruction for self-defense was revised in 2023, the 2011 instruction was in effect at the time of defendant's trial. See Model Jury Charges (Criminal), "Justification - Self Defense in Self Protection (N.J.S.A. 2C:3-4)" (rev. Nov. 13, 2023).

foreperson to the court. However, the court included an exception to that general requirement: if "somebody tried to contact you" or there was "some other violation of the rules" the court had previously explained, then an individual juror could send a note to the judge as long as the note did not disclose the jury's deliberations.

During the second day of deliberations, juror number four (juror four)—who was not the jury foreperson—wrote a note to the court stating: "May I speak to the Judge? I feel the environment in the jury room is not comfortable for me right now." The court informed counsel and defendant it had received the note and read the note into the record. The court stated it had previously advised the jury that jurors "were not to send individual notes," even though it had previously instructed that individual jurors could send notes to the court to report that someone had tried to contact them or talk to them about the case "or some other violation of the rules like that."

After explaining its receipt of the note from the juror, the court noted that it had also received a note from the jury foreperson stating the jury was "not in agreement on the State's first charge of murder. Please advise."[5] Defense

---

[5] The court received the note from the jury approximately ten minutes after its receipt of the note from the individual juror.

 A-1652-21

counsel requested a mistrial or, alternatively, for the court to voir dire the juror to investigate the circumstances giving rise her note. The court denied both requests. The court determined it would not address juror four's question and it would instead instruct the jury to continue its deliberations. See Model Jury Charges (Criminal), "Judge's Instructions on Further Jury Deliberations" (approved Jan. 14, 2013).

Moments after the court provided the additional instructions to the jury, the court noted that it had been advised juror four asked the jury attendant why the court had not addressed her written note. Defense counsel renewed her request that the court question juror four concerning her written note, and the court rejected the request, stating it would "not . . . delve into it unless there was an explicit statement that somebody threatened somebody in the jury room." The court explained the note had stated only that juror four was not comfortable. The court also stated that it intended to address the entire jury and reiterate its prior instructions about the manner in which notes from the jury should be submitted without directly addressing juror four's note. Before it could address the jury, however, the court was advised that the jury had reached a unanimous verdict on all charges.

A-1652-21

The jury acquitted defendant of murder, instead finding him guilty of second-degree passion-provocation manslaughter. The jury found defendant guilty of disorderly-persons theft, a lesser-included offense of fourth-degree theft alleged in the indictment; fourth-degree unlawful taking of a means of conveyance as a lesser-included offense of the third-degree theft of Gary's vehicle alleged in the indictment; third-degree possession of a weapon—a knife—for an unlawful purpose; fourth-degree unlawful possession of a weapon—a knife; and fourth-degree tampering with or fabricating evidence. The jury found defendant not guilty of burglary, robbery, and felony murder.

In 2016, approximately three years prior to the April 19, 2019 incident resulting in Gary's death, defendant had pleaded guilty to third-degree theft, as alleged in an accusation, and fourth-degree operating a motor vehicle during a license suspension for a second or subsequent conviction for driving while intoxicated, N.J.S.A. 2C:40-26(b), as charged in an indictment.[6] In September 2016, the court sentenced defendant to concurrent five-year probationary terms on those convictions. Thus, defendant was serving the probationary terms on

---

[6] The accusation number is docketed in Cumberland County as 16-02-0140-A and indictment number is docketed in Cumberland County as 15-04-0381-I.

those convictions when the incident resulting in Gary's death took place on April 19, 2019.

Prior to the incident resulting in Gary's death, the State had filed violation-of-probation (VOP) charges against defendant, alleging he had violated the conditions of probation by failing to report and pay court-imposed financial obligations. In amended charges filed after defendant's arrest on the offenses related to Gary's death, the State claimed defendant had violated the conditions of probation by getting charged with multiple new offenses. At his sentencing on the charges arising from Gary's death, defendant pleaded guilty to the VOP charges, offering as the factual basis for his plea that he had violated his probation by having been found guilty of "a second[-]degree crime and other fourth[-]degree crimes" while on probation.

At sentencing, the court first granted the State's motion for an extended-term sentence on defendant's conviction for second-degree passion-provocation manslaughter, and then imposed a twenty-year sentence on that charge subject to the requirements of the No Early Release Act, N.J.S.A. 2C:43-7.2. The court merged defendant's convictions on the weapons offenses with his conviction for passion-provocation manslaughter, imposed sentences on the remaining offenses for which the jury had found defendant guilty, and ordered the

sentences to be served concurrently with the extended-term sentence on the manslaughter charge.

On the VOP charges, the court resentenced defendant to a five-year custodial term on the third-degree theft offense and a concurrent eighteen-month custodial term on the fourth-degree driving-while-suspended offense. The court ordered that the sentences on the VOP charges run consecutive to the aggregate twenty-year sentence it had imposed on the passion-provocation-manslaughter charge and related charges for which defendant had been convicted at trial.

This appeal followed. Defendant offers the following arguments for our consideration:

> POINT I
>
> PLAIN ERROR WAS COMMITTED WHEN, IN DIRECT CONTRAVENTION OF THE RELEVANT CASE LAW, THE JUDGE FAILED TO INFORM THE JURY THAT THE SELF-DEFENSE INSTRUCTION APPLIED NOT ONLY TO MURDER, BUT TO PASSION/PROVOCATION MANSLAUGHTER AS WELL, AND INSTEAD TOLD THE JURORS:  "I INSTRUCTED YOU ON THE CONCEPT OF SELF-DEFENSE AS IT APPLIES TO MURDER."
>
> POINT II
>
> THE JUDGE COMMITTED PLAIN ERROR WHEN HE OMITTED A "COURSE OF ABUSE" INSTRUCTION FROM THE JURY INSTRUCTION ON SELF-DEFENSE, INSTEAD IMPROPERLY

A-1652-21

LIMITING THAT CONCEPT ONLY TO A REASON TO RETURN A VERDICT FOR PASSION/PROVOCATION MANSLAUGHTER RATHER THAN MURDER.

POINT III

THE JUDGE FAILED IN HIS ROLE AS "GATEKEEPER" OF THE IMPARTIALITY OF THE JURY WHEN HE CHOSE TO IGNORE A NOTE FROM A JUROR THAT STATED THAT THE ENVIRONMENT IN THE JURY ROOM WAS MAKING HER UNCOMFORTABLE, AND THEN IGNORED HER AGAIN WHEN SHE INQUIRED WHY HER FIRST NOTE WAS NOT BEING ADDRESSED. THE JUDGE SHOULD HAVE CONDUCTED A VOIR DIRE OF THAT JUROR, AS REQUESTED BY DEFENSE COUNSEL, TO DETERMINE WHAT THE PROBLEM WAS.

POINT IV

THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE.

## II.

For the first time on appeal, defendant argues the court should have expressly instructed the jury that the justification of self-defense under N.J.S.A. 2C:3-4 applied not only to the murder charge but also to the most serious charge for which he was convicted—passion-provocation manslaughter. Defendant claims that the court's failure to instruct the jury that the justification of self-defense applied to the jury's consideration of the passion-provocation-

14

manslaughter charge resulted in an inaccurate and ambiguous instruction that deprived him of a fair trial and deprived the jurors of an accurate statement of the legal principles applicable and essential to a fair determination of his guilt on the offense.

Appropriate and proper jury instructions are "essential for a fair trial." State v. Scharf, 225 N.J. 547, 581 (2016) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). As a result, "[i]t is the independent duty of the court to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case. . . ." Id. at 580 (quoting Reddish, 181 N.J. at 613).

As is the case here, "[w]hen a party does not object to a jury instruction, this [c]ourt reviews the instruction for plain error." State v. Montalvo, 229 N.J. 300, 320 (2017) (citing R. 1:7-2; State v. Wakefield, 190 N.J. 397, 472-73 (2007)). More particularly,

> [r]egarding a jury instruction, "plain error requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'"
>
> [Id. at 321 (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).]

"The error must be evaluated 'in light of the overall strength of the State's case.'" State v. Sanchez-Medina, 231 N.J. 452, 468 (2018) (quoting State v. Galicia, 210 N.J. 364, 388 (2012)).  However, in assessing the strength of the State's case, the plausibility, or lack thereof, of a defense theory, "is not reason to hold that the trial court's error was harmless." State v. Hedgespeth, 249 N.J. 234, 253 (2021) (citation omitted).  "Determining implausibility 'is in the sole province of the jury.  Judges should not intrude as the thirteenth juror.'" Ibid. (quoting State v. Scott, 229 N.J. 469, 485 (2017)).  Our Supreme Court has emphasized that "[e]rroneous jury instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error." State v. McKinney, 223 N.J. 475, 495-96 (2015) (alteration in original) (quoting State v. Afanador, 151 N.J. 41, 54 (1997)).

We have consistently found plain error where a trial court did not specify that affirmative defenses, including self-defense, also apply to lesser-included offenses.  In reasoning that applies with syllogistic precision here, in State v. Gentry, we explained that "[w]here there is sufficient evidence to warrant a self-defense charge, failure to instruct the jury that self-defense is a complete justification for manslaughter offenses as well as for murder constitutes plain

error." 439 N.J. Super. 57, 67 (App. Div. 2015) (citing State v. O'Neil, 219 N.J. 598, 617 (2014)).

Similarly, in State v. Supreme Life, we explained that "it was imperative for the jury to understand the very same principle of self-defense and defense of another applied to their consideration of the lesser-included manslaughter offense." 473 N.J. Super. 165, 177 (App. Div. 2022). We concluded it was plain error for the court to have "omit[ted] specific instructions advising the jury that it should consider the affirmative defenses as to all lesser included offenses." Ibid. (citing Gentry, 439 N.J. Super. at 67); see also State v. Rodriguez, 195 N.J. 165, 171 (2008) (finding "the trial court's repeated instruction to the jury that self-defense did not apply to manslaughter was prejudicial error" (quoting State v. Rodriguez, 397 N.J. Super. 101, 113 (2007))).

Defendant stands in the same shoes as the defendant in Supreme Life, who had been acquitted of murder but was convicted of passion-provocation manslaughter. 473 N.J. Super. at 169. We explained "[t]he judge . . . told the jury, '[t]he indictment charges [defendant] with murder and attempted murder.' Using the model jury charge, he explained self-defense . . . but he never told the jury it also should consider [that] affirmative defense[] if or when it considered the lesser-included charge of passion-provocation manslaughter." Id. at 177

(third alteration in original).  We found plain error requiring reversal because "it was imperative for the jury to understand" that self-defense also applied to passion-provocation manslaughter.  Ibid.  Here, the court's jury instructions suffer from the identical fatal infirmity.

The court never instructed the jury that the justification of self-defense must be considered in its determination of the passion-provocation-manslaughter charge.  We otherwise do not read the instructions as providing any direction to the jurors that they were required to apply self-defense in their consideration of the passion-provocation-manslaughter charge.  For those reasons alone, we find plain error and reverse defendant's conviction for passion-provocation manslaughter.  Ibid.

Moreover, in addition to the lack of any instruction that the justification of self-defense applied to the passion-provocation-manslaughter offense for which defendant was convicted, the court's instructions otherwise misleadingly suggested the justification of self-defense should be considered only in the jury's assessment of the murder charge in the indictment.

In its instructions on self-defense,[7] the court first referred to the fact that "[t]he indictment charges that . . . defendant has committed the crime of homicide." The court did not define "homicide," but during its instructions immediately following the self-defense charge, the court refers to only one charge in the indictment, murder. More particularly, after instructing the jury on the elements of self-defense, the court explained it would "[n]ow . . . go on to the charges in the indictment," noting "the first one is murder," but it never otherwise instructed or explained that self-defense applied to any charges, including passion-provocation manslaughter, which were not included in the indictment. (Emphasis added).

On what it described as the murder charge in the indictment, the court provided the model jury instruction, Model Jury Charges (Criminal), "Murder, Passion/Provocation and Aggravated/Reckless Manslaughter (N.J.S.A. 2C:11-3(a)(1) and (2); 2C:11-4(a), (b)(1) and (b)(2))" (rev. June 8, 2015), and explained that the first count of the indictment charged defendant with "murder." The instruction, however, differentiated between the offense of murder and the

---

[7] The court instructed the jury on the justification of self-defense in accordance with the model jury charge. See Model Jury Charges (Criminal), "Justification - Self Defense in Self Protection (N.J.S.A. 2C:3-4)" (rev. June 13, 2011).

A-1652-21

separate and distinct charge of passion-provocation manslaughter, which was not charged in the indictment.

The court's statements and instructions also erroneously suggested that the justification of self-defense applied solely to the murder charge in the indictment and, as such, did not apply to the charges—including passion-provocation manslaughter—that were not charged in the indictment. The erroneous suggestion the self-defense instruction applied only to the murder charge in the indictment was never remedied by the required, but ungiven, instruction that self-defense applied to all the charges—including passion-provocation manslaughter—related to causing Gary's death. See Supreme Life, 473 N.J. Super. at 177.

During its instruction on the indictment's possession-of-a-weapon-for-an-unlawful-purpose charge, the court further reinforced that self-defense applied only to the murder charge. In its instructions on the weapons offense, the court confirmed that it had "instructed [the jury] on the concept of self-defense as it applies to the offense of murder," which the court's prior instructions had identified as an offense distinct from passion-provocation manslaughter. (Emphasis added). In discussing the weapons offense, the court further detailed the "concept of self-defense as it applies to" murder is "different than the

protective purpose" that would support a defense to the possession-of-a-weapon-for-an-unlawful-purpose offense charged in the indictment.

In its instructions concerning the verdict sheet, the court further reinforced the notion that the justification of self-defense did not apply to the passion-provocation-manslaughter charge. The court explained that the murder charge in the indictment was the first offense to be considered, and noted the jury could choose only one of four options on the verdict sheet to state its determination of defendant's guilt on the charge.

The court then noted that the first option was not guilty of "[m]urder" because "[d]efendant was justified in the use of deadly force in his own self[-]defense." That option required that the jury determine whether defendant was not guilty of murder based on the justification of self-defense. The second option was to find defendant not guilty of murder. As explained by the court, the third option was to find defendant guilty of passion-provocation manslaughter, and the fourth option was to find defendant was guilty of murder.

The verdict sheet, and the court's instructions to the jury about it, did not include an option of finding defendant not guilty of passion-provocation manslaughter based on the justification of self-defense as they had on the separate charge of murder. The failure to include that option reinforced that

self-defense should not be applied by the jury to its determination of the passion-provocation-manslaughter charge.

Self-defense applied to murder and passion-provocation manslaughter but, as noted, the court never instructed the jury that was the case, the court made clear only that self-defense applied to the murder charge in the indictment, and the court's instructions concerning one of the weapons charges and the verdict sheet consistently reinforced the erroneous notion that self-defense applied only to the murder charge and therefore did not apply to the passion-provocation-manslaughter charge. In accordance with our decisions in Supreme Life and Gentry, we find those errors constitute plain error requiring reversal not only because the court failed to affirmatively instruct the jury that the justification of self-defense applied to the passion-provocation-manslaughter charge, Supreme Life, 473 N.J. Super. at 177; Gentry, 439 N.J. Super. at 67, but also because the court's instructions, when considered as a whole, erroneously and consistently suggested self-defense applied solely to the murder charge and did not apply to the passion-provocation-manslaughter charge, see State v. Torres, 183 N.J. 554, 564 (2005) (explaining in reviewing jury instructions, "[t]he charge must be read as a whole in determining whether there was any error" (citing State v. Jordan, 147 N.J. 409, 422 (1997))).

A-1652-21

We reject the State's claim that because a finding of guilt on the passion-provocation-manslaughter charge required that the jury find beyond a reasonable doubt that the State had proved the elements of the crime of murder, the jury's failure to find defendant not guilty of murder based on the justification of self-defense must be accepted as a determination the State disproved defendant's self-defense claim and, therefore, the failure to instruct the jury that self-defense applied to the passion-provocation-manslaughter charge was harmless. The State argues that we should not find plain error because the jury's apparent rejection of defendant's claim he should be found not guilty of murder because he acted in self-defense precludes a logical and consistent verdict that he was not guilty of passion-provocation manslaughter because he acted in self-defense.

The State's argument ignores that there is no requirement that a jury render consistent verdicts and purportedly inconsistent verdicts are not subject to review "so long as the evidence was sufficient to establish guilt on the substantive offenses beyond a reasonable doubt." State v. Petties, 139 N.J. 310, 319 (1995) (quoting State v. Kamienski, 254 N.J. Super. 75, 95 (App. Div. 1992)). We also do not rely on "conjecture regarding the nature of the deliberations in the jury room," State v. Muhammad, 182 N.J. 551, 578 (2005)

23

(citing State v. Grey, 147 N.J. 4, 11 (1996)), or "speculate whether verdicts resulted from jury lenity, mistake, or compromise," ibid. (citing Grey, 147 N.J. at 11). That is precisely what the State requests that we do here.

We decline the State's invitation to speculate about, rely on conjecture to discern, or extrapolate from the jury's other findings to determine the reason for the jury's apparent rejection of self-defense on the murder charge. Indeed, the court instructed the jury that if it found defendant not guilty of murder, it should nonetheless consider whether defendant committed passion-provocation manslaughter. In other words, the court instructed the jury that it must consider the passion-provocation-manslaughter charge even if it otherwise found defendant not guilty of murder, based on self-defense or otherwise.

That instruction makes little sense if, as the State suggests, the jury's failure to find defendant not guilty of murder based on self-defense required the conclusion that defendant could not be convicted of passion-provocation manslaughter. Indeed, the jury may have reached a compromise verdict based on a reasonable interpretation of the court's instructions that it could find defendant not guilty of murder based on self-defense but convict defendant of passion-provocation manslaughter based on an analysis of the evidence untethered to an application of the justification of self-defense.

However, in its assessment of the passion-provocation-manslaughter charge, defendant was entitled to have the jury apply the justification of self-defense to both charges, not just the murder charge, and the court committed plain error by failing to instruct the jury that self-defense applied to the passion-provocation-manslaughter charge and by suggesting, and then reinforcing, that the justification did not apply to the charge. Supreme Life, 473 N.J. Super. at 177; Gentry, 439 N.J. Super. at 67. Those errors require reversal of defendant's conviction for passion-provocation manslaughter.

We are not persuaded by the State's reliance on State v. Hall, 569 A.2d 534 (Conn. 1990), and People v. Gross, 287 P.3d 105 (Colo. 2012), as requiring a different result. In the first instance, as we have explained, we have consistently found that a failure to instruct a jury that the justification of self-defense applies to all charges—including those not contained in the indictment—for which a defendant may be convicted constitutes plain error warranting reversal. Gentry, 439 N.J. Super. at 67; Supreme Life, 473 N.J. Super. at 177. We discern no basis on the facts presented to depart from this precedent here.

Moreover, in Hall, the Court found harmless error in the trial court's failure to separately instruct the jury on self-defense on a lesser-included offense

of second-degree manslaughter charge after the trial court had instructed the jury that self-defense applied to murder and first-degree manslaughter charges. 569 A.2d at 539. The Court reasoned that the defendant did not suffer any prejudice from the trial court's failure because the trial court had otherwise instructed the jury that if it found "'the defendant acted in self-defense, it is a complete justification for his conduct and you will find him not guilty.'" Ibid. Thus, the Court reasoned it "was not reasonably possible that the jury was misled by the court's failure to instruct the jury that they might consider self-defense with respect to manslaughter in the second degree." Ibid.

The same cannot be said here. As we have explained, the court's instructions stated only that self-defense applied to the charge—murder—in the indictment and otherwise erroneously suggested in varied ways that self-defense did not apply to the passion-provocation-manslaughter charge. Thus, unlike in Hall, we are compelled to conclude that it is reasonably possible the jurors did not understand it was imperative that they consider self-defense in their determination of defendant's guilt on the passion-provocation-manslaughter charge.

In Gross, the Court found a trial court erred by failing to instruct the jury that the justification of self-defense applied to an extreme-indifference-murder

charge as a lesser-included offense of a second-degree-assault charge. 287 P.2d at 111. The trial court had instructed the jury that self-defense applied to its determination of the second-degree-assault charge. Ibid. The Court, however, found the error harmless because the jury had otherwise rejected defendant's reliance on self-defense under a different, and more onerous standard, applicable to the second-degree-assault charge. Id. at 111-12. The Court reasoned that the State had disproved self-defense beyond a reasonable doubt under the more onerous standard and therefore an instruction on self-defense under the less onerous standard applicable to the lesser-included extreme-indifference-murder charge "would not have affected the verdict." Id. at 112.

We find Gross unpersuasive. It is inconsistent with our precedent, see Supreme Life, 473 N.J. Super. at 177; Gentry, 439 N.J. Super. at 67, and, unlike here, the trial court in Gross had not effectively instructed the jury that self-defense applied solely to the charges in the indictment or otherwise erroneously suggested and reaffirmed that the justification of self-defense did not apply to charges other than the murder charge.

For the foregoing reasons, we reverse defendant's conviction for passion-provocation manslaughter and remand for a new trial on that charge and the weapons offenses. Defendant does not argue that reversal of his conviction for

27

passion-provocation manslaughter also requires reversal of his convictions for unlawful possession of weapon and possession of a weapon for an unlawful purpose. However, we are constrained to vacate defendant's convictions on the weapons offenses because they are dependent on defendant's possession of a knife as the weapon he allegedly unlawfully possessed and used during the incident resulting in Gary's death. If a properly-instructed jury on remand finds defendant not guilty of passion-provocation manslaughter or a lesser-included offense, the jury must also consider anew whether defendant is guilty of the weapons offenses for which he was charged in the indictment.

## III.

Defendant also argues he is entitled to reversal of his convictions on all the charges because the court erred by denying his request to question juror four after the juror sent a note to the court during deliberations. Defendant contends the court's refusal to grant the juror's request to speak to the judge because "the environment in the jury room [was] not comfortable for [the juror] right now" deprived him of his right to a fair trial before an impartial jury.

Both the Sixth Amendment of the United States Constitution and Article I, paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to trial before an impartial jury. U.S. Const. amend. VI; N.J. Const.

28

art. I, ¶ 10; see also State v. Tyler, 176 N.J. 171, 181 (2003) (citing State v. Marchand, 31 N.J. 223, 232 (1959)). Thus, "[t]rial judges in their gatekeeping role have a duty 'to take all appropriate measures to ensure the fair and proper administration of a criminal trial. . . .'" Ibid. (quoting State v. Williams, 93 N.J. 39, 62 (1983)). Our courts "traditionally have accorded trial courts deference in exercising control over matters pertaining to the jury." State v. R.D., 169 N.J. 551, 559-60 (2001) (citing State v. Simon, 161 N.J. 416, 466 (1999); State v. Harvey, 151 N.J. 117, 214 (1997); State v. Czachor, 82 N.J. 392, 407 (1980)). However, "if a trial court's discretionary decision is based upon a misconception of the law, a reviewing court owes that decision no particular deference." State v. Lyons, 417 N.J. Super. 251, 258 (App. Div. 2010) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Where, as here, the trial court relied on a "misconception of the law"—that it should an individual juror's note only if there is evidence of physical threats—our review is de novo. Ibid. (citing Manalapan Realty, L.P., 140 N.J. at 378).

It is well-established that the trial court cannot "make inquiry into the deliberative process[.]" State v. Phillips, 322 N.J. Super. 429, 441 (1999) (citing State v. LaFera, 42 N.J. 97, 106 (1964); State v. Kociolek, 20 N.J. 92, 100 (1955)). There is not, however, an absolute rule against the court

29

communicating with jurors during the course of deliberations. Kociolek, 20 N.J. at 100-01 (differentiating between a juror's mental processes, which may not be disclosed, from experiences, conditions, or events that occurred in the jury room, which may be). "New Jersey courts have permitted and, indeed, have required voir dire inquiry of jurors, even while deliberating. . . ." State v. Bisaccia, 319 N.J. Super. 1, 15 (App. Div. 1999) (citing State v. Hightower, 146 N.J. 239, 248-49, 265-67 (1996); State v. Grant, 254 N.J. Super. 571, 580-87 (App. Div. 1992)). And, "[i]f a court is uncertain whether a juror is unable to continue, the court should question the juror in sufficient detail to establish a record adequate to inform the trial court, as well as a reviewing court," and "should not rely on instinct." State v. Valenzuela, 136 N.J. 458, 472 (1994).

As noted, during its instructions to the jury, the court explained the circumstances in which an individual juror could properly communicate by note with the court during deliberations. The court explained that generally, the jury foreperson should be the only juror sending notes to the court and that "[t]he only exception is if an individual juror has to report something" that contravened the court's other instructions or was otherwise a "violation of the rules." The court reminded the jurors that should a juror send a question, they must "not disclose where [they] stand in [their] deliberations."

During deliberations, juror four sent a note to the court stating: "May I speak to the Judge? I feel the environment in the jury room is not comfortable for me right now." About ten minutes later, but before the judge had made a decision concerning its response to juror four's note, the jury foreperson sent another note stating: "Your Honor, we are not in agreement on the State's first charge of murder. Please advise."

The court concluded juror four's note was "about deliberations" and remarked that juror four had not sent the note in "conformance with the instructions" given to the jury. The court failed to consider it had instructed the jurors that notes from individual jurors were permitted if a juror had something to report about a contravention of the court's instructions or a violation of the rules. Instead, without articulating any basis for its conclusion, the court found there was no need to investigate the juror's concerns, or respond to the juror's note, finding juror four "is alone in her opinion" and her note was "about deliberations." The State similarly proffered that the note suggested only that people were "talking over" her or "not letting her express her opinion."

Defense counsel explained she interpreted the note differently than the court and the State, arguing the note could properly be read to suggest juror four sought to speak to the court about impermissible "hostility," "pressure," or

31

"badgering." Defense counsel noted that "if [the juror was, indeed,] getting harassed," then she "did follow the [c]ourt's instruction" by sending a note directly to the court. Defense counsel accordingly requested a mistrial, or alternatively, for the court to question juror four to determine the nature of the issue and her concern as expressed in the note.

The court denied defendant's request for a mistrial and to voir dire juror four. Based solely on the limited information in the note, the court speculated that juror four "finds herself alone in her position and that makes her uncomfortable[,]" but that "doesn't mean anything has been done towards her." In other words, the court assumed and speculated that juror four was a holdout and felt uncomfortable in the deliberations for that reason alone.

Opting not to respond directly to juror four's note, and without making any inquiry of the juror concerning the basis for her claim the environment in the jury room was uncomfortable, the court decided to respond only the jury foreperson's note by instructing the jury in accordance with the model jury instruction for further deliberations. See Model Jury Charges (Criminal), "Judge's Instructions on Further Jury Deliberations" (approved Jan. 14, 2013).

Shortly after the supplemental charge was provided to the jury, juror four asked the jury attendant why her note had not been addressed by the court. After

receiving that information, the court indicated it would tell the jurors: "[i]f you do send out a question, do not disclose where you stand in your deliberations, because that is what juror four is doing." The court erred in making that finding. Juror four's note had not disclosed any information about where she or the jury stood in deliberations.

Defense counsel reiterated her concern that juror four was "more than just getting uncomfortable" but facing palpable "pressure." However, the court replied that there was no "indication that there [were] any threats of violence or anything . . . [a]nd I am not going to delve into it unless there was an explicit statement that somebody threatened somebody in the jury room." The court added, "that's the ruling at this point and I am not going to justify it to you because that's my ruling. Okay? All right."

The court erred by refusing to address juror four's note. It is well-established that even where a court is merely "uncertain" about a juror's ability to continue, it "should question the juror in sufficient detail to establish a record adequate to inform the trial court, as well as a reviewing court," and "should not rely on instinct." Valenzuela, 136 N.J. at 472.

Although the trial court correctly observed that it could not properly question the jurors individually about the deliberations, that prohibition did not

justify the court's decision to ignore juror four's note. <u>Valenzuela</u>, 136 N.J. at 472. As noted, the note did not disclose any deliberations. And, by failing to address the note with juror four, the court ignored it had instructed that notes from individual jurors were permitted to report a violation of the rules or a contravention of the instructions and that juror four's note may have been an effort to do just that. The court instead ignored the note based on the assumption and mere speculation that questioning juror four about the note would both require disclosure of the jury's deliberations and would not yield information about either a contravention of the rules or the court's instructions.

The court could have, and should have, done more. The court should have questioned juror four outside the presence of the other jurors to determine the exact nature of her complaint or concern. The questioning should have been preceded by a statement that the juror was prohibited from providing information concerning the deliberations—the votes of the jury on any of the charges—but that the juror should state only whether anything resulting in the uncomfortable environment during deliberations had violated the rules or the court's instructions. <u>Phillips</u>, 322 N.J. Super. at 441. Such a simple but essential process would have provided the court and counsel with the information required to address the note and the juror's concern without revealing the

substance of the deliberations. See ibid. (finding reversible error for failure to question deliberating jurors about a potentially prejudicial comment).

By failing to question the juror, the court relied solely on speculation and conjecture about the juror's concern and leaves this court with a record bereft of any evidence permitting a proper determination about whether juror four could properly deliberate in an environment conducive to the rendering of a verdict by a fair and impartial jury. Phillips, 322 N.J. Super. at 441 (explaining a court's "careful questioning of the jurors could have shed light on the incident and could have provided a more meaningful record for appellate review").

Where a trial court errs by failing to investigate an issue raised by a juror, we have taken two approaches. In Bisaccia, 319 N.J. Super. at 7-11, we considered a situation in which several factors threatened the jury's ability to fairly deliberate: newspapers covering the trial were discussed in the jury room, id. at 7-8; gunshots were fired at a juror's car, id. at 8; another juror reported an inability to "make a fair decision," ibid.; two additional jurors repeated being followed, id. at 8-9; and an unidentified juror indicated to the jury foreperson that he was "in fear of his life," id. at 11. The trial court refused to meaningfully address the issues, and we found reversible error, concluding it was appropriate to remand for a hearing, at which the State would bear the burden of proving

that the jury's verdict was based exclusively on the evidence, "free of taint by improper or extraneous influences." Id. at 19-20 (citing State v. Miller, 875 P.2d 788, 793 (Ariz. 1994)). If the State did not meet that burden, a new trial would be granted. Id. at 20 (citing Miller, 875 P.2d at 793). We reasoned that "the trial judge is still on the bench" and "the mere passage of time should not by itself preclude a remand." Id. at 19.

In Phillips, however, we took a different approach. 322 N.J. Super. at 442. Noting that the trial judge had retired, "memories ha[d] undoubtedly faded and, significantly, neither the State nor the defendant has urged" a hearing on remand, we determined that we were "obliged to reverse" and remand for a new trial. Ibid.

Here, we apply the Bisaccia approach because the judge who tried the case remains available, 319 N.J. Super. at 19-20, and we are otherwise reluctant to reverse defendant's convictions without any additional inquiry from juror four. It may be established that the trial court had correctly speculated that juror four's expression of discomfort amounted to nothing of import affecting the fairness and propriety of the deliberations. If so, confirmation of that fact by questioning juror four, and considering any other evidence deemed relevant, will end the matter.

On the other hand, because we cannot rely on speculation and the court clearly erred by effectively ignoring juror four's note, there is good cause to remand to the trial court so it may question juror four and allow such further inquiries as may be required to obtain the information necessary to determine whether juror four's unaddressed concern deprived defendant of a disposition by a fair and impartial jury.  See R. 1:16-1.

We therefore remand for the court to conduct a hearing to ascertain juror four's concern as expressed in the note and such other proceedings that may be required to determine if the State has proven beyond a reasonable doubt that the jury's deliberations were not compromised by the court's failure to address juror four's concerns during jury deliberations.  Bisaccia, 319 N.J. Super. at 20.  If due to the passage of time, the unavailability of juror four or any other witnesses whose testimony might be essential, it is not feasible to conduct the hearing on remand, the trial court shall set aside defendant's convictions on all the charges and conduct a retrial.  Phillips, 322 N.J. Super. at 442.  If the court determines juror four's concern as expressed in the note did not affect the propriety or fairness of the jury's deliberations, the court on remand shall conduct a retrial solely on the passion-provocation-manslaughter charge and the weapons offenses.

We are unpersuaded by the State's contention that defendant's decision not to request the polling of the jury requires a rejection of defendant's claim he is entitled to a reversal because the court failed to respond to, or address, juror four's note. To be sure, a failure to request polling of a jury bars a later claim based on lack of polling at trial, and a failure to object to the manner in which a polling is performed bars a later claim the polling was invalid. State v. Vaszorich, 13 N.J. 99, 127 (1953) ("Although a poll of the jury is the right of the accused, it . . . may be waived by a failure to make [a timely] request."); State v. Rodriguez, 254 N.J. Super. 339, 349 (App. Div. 1992) (explaining just as a failure to object to redeliberation waived an objection to redeliberation, failure to object to "either the lack of a poll of the jurors or a defect in the polling" waives the right to such objections (citing State v. Ward, 57 N.J. 75, 79 (1970))). But no such claim is made here.

Defendant concedes he did not request polling of the jury and he does not argue on appeal the court erred by failing to poll the jurors. Thus, the waivers addressed in Rodriguez and Vaszorich have no application here. Defendant argues on appeal the court erred by failing to address juror four's note and by denying his repeated requests that the court question juror four about the note or declare a mistrial. By making those requests, defendant properly preserved his

right to challenge the court's denials on appeal. The State does not point to any case finding a waiver of properly preserved claims of trial court error because the defendant did not request the polling of the jury on its verdict. We otherwise find no basis to find a waiver of defendant's properly preserved claims.

## IV.

Defendant argues for the first time on appeal that the court's instruction on self-defense was in error because it did not explain that the jury could consider the history of Gary's alleged prior abuse of defendant in determining the honesty and reasonableness of defendant's belief in the necessity of using deadly force. We agree the court erred by failing to include what defendant characterizes as a continued "course of ill treatment" charge in the justification of self-defense instruction. See State v. Gartland, 149 N.J. 456, 472 (1997). On remand, the court shall include such a charge within the self-defense instruction if supported by the evidence presented.

Because defendant did not object to the self-defense instruction or object to its failure to provide a continuing-course-of-ill-treatment charge, we review the court's error for plain error. R. 2:10-2. Given our determination defendant is entitled to a retrial on the passion-provocation-manslaughter charge, we find it unnecessary to otherwise consider his claim that the failure to include the

continuing-course-of-ill-treatment charge in the self-defense instruction constituted plain error independently warranting reversal of the passion-provocation-manslaughter conviction. See generally State v. Robinson, 200 N.J. 1, 19-20 (2009) (explaining "[a]ppellate review is not limitless" and reviewing courts will generally not consider issues, even of constitutional magnitude, for the first time on appeal unless the issues go to the court's jurisdiction or concern matters of great public interest).

V.

Defendant also makes a series of arguments challenging the sentences imposed by the court. Because we have reversed defendant's convictions for passion-provocation manslaughter and vacated the related weapons offenses convictions, we vacate defendant's sentences on those charges, as well as sentences imposed on the other charges for which he was convicted at trial that we have not reversed or vacated. Defendant shall be resentenced on the offenses we have not reversed or vacated, as well as any additional offenses for which is convicted, if any, after the retrial on remand. Thus, our review of defendant's sentencing arguments are unnecessary because defendant will be resentenced on a new record and perhaps with different convictions following a retrial on remand.

40

In sum, we reverse defendant's conviction for passion-provocation manslaughter, vacate his convictions on the weapons offenses, and remand for a new trial on those charges. We also remand for the court to conduct a hearing addressing juror four's note in accordance with our prior discussion of the issue. If the remand court finds defendant was deprived of a fair trial or determines a hearing on the issue of juror four's note is not feasible, it shall vacate all defendant's convictions and conduct a retrial on all the charges for which he was found guilty at his initial trial. If the court determines defendant was not deprived of a fair trial following its hearing concerning juror four, it shall conduct a retrial only on the passion-provocation manslaughter and weapons offenses.[8] We vacate defendant's sentences on all the offenses and direct that the court resentence defendant on the convictions in accordance with the applicable legal standards as they stand following the retrial.[9] The remand

---

[8] That is, we affirm defendant's convictions for disorderly persons theft, fourth-degree unlawful taking of a means of conveyance, and fourth-degree tampering with or fabricating evidence subject to those convictions being vacated on remand following the trial court's disposition of the issues concerning juror four. Defendant offers no argument in support of a reversal of his convictions for those offenses other than his claim concerning juror four.

[9] Defendant also claims he is entitled to vacatur of its convictions for the violations of probation to which he pleaded under Cumberland County accusation 16-02-0140-A and indictment 15-04-0381-I if all his convictions on

proceedings concerning juror four shall be assigned to the judge who presided over defendant's prior jury trial.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

the crimes for which the jury found him guilty are reversed because his guilty plea to the violations of probation were based on his guilt of the offenses established by his convictions by the jury. Because we do not reverse all defendant's convictions, and remand in part for the trial court to determine if all defendant's jury convictions should be vacated, we do not address defendant's request for vacatur of his convictions for violations of probation. Defendant shall be permitted to make an application to withdraw his guilty plea on the VOPs in the first instance to the trial court on remand.

A-1652-21